# Porter *versus* Gunnison.

1. The possession of a negotiable note, with the indorsement of the payee, is *prima facie* a sufficient title, to enable the plaintiff to maintain an action on it.

2. In an action on a promissory note, the burden of proof that it was obtained *bona fide*, in the usual course of business, is thrown on the plaintiff by very slight circumstances.

3. In an action on a promissory note, under a notice to plaintiff to prove consideration, &c., the defendant may give in evidence that the note has been *stolen* or *lost*, or obtained by *duress*, or *procured*, or *put in circulation* by *fraud ;* upon proof of either of which the plaintiff must show himself to be a holder *bona fide*, for value, &c.

4. Where one of two partners gives the notes of the firm for his private debt, or for the accommodation of the payee, as between these parties, it is a gross fraud on the other partner.

5. When a plaintiff derives title to the note in suit, through a fraudulent source, the law requires him to show the transaction to be *bona fide* on his part.

ERROR to the Court of Common Pleas of *Dauphin county.*

This suit was brought by William Gunnison, the plaintiff, against Holland & Porter, on two promissory notes drawn in the name of Holland & Porter, and payable to the order of Pickell & Willett, one dated August 5, 1848, for the payment of $915, at three months after date, and the other dated August 24, 1848, for $993, at four months after date. The notes were in the hand-writing of Samuel Holland, and signed by him in the name of Holland & Porter, and were indorsed by Pickell & Willett, to William Gunnison, the plaintiff. The plaintiff proved that Samuel Holland and David R. Porter, were engaged in mining coal at Nanticoke, in Luzerne county, and that they kept a store near the mines, in connection with their business of mining and shipping coal; that the business was done in the name of Holland & Porter, with other testimony tending to show a partnership between them.

On the part of the defendant it was alleged, and evidence given tending to prove, that the notes in question were given by Samuel Holland, to Pickell & Willett, for their accommodation; that Samuel Holland had dealings on his own account with Pickell & Willett, and was in the habit, for a long time before these notes were given, of exchanging his notes for the acceptances or notes of Pickell & Willett, to raise money for their accommodation. That some of this paper having been protested, Pickell & Willett became unable to negotiate the notes of Samuel Holland, and requested him to send notes signed with the name of Holland & Porter, in pursuance of which request, these notes with others, were given to them by Mr. Holland, without the knowledge or consent of Mr. Porter. The defendant, Mr. Porter,

[Porter *v.* Gunnison.]

contended that Samuel Holland had no authority to give these notes in the name of Holland & Porter, and that Pickell & Willett, in putting them in circulation, committed a fraud upon him. He also gave the plaintiff notice that he would be required to prove on the trial, in what manner he came into possession of the notes, and what consideration he paid for them. The only evidence given by the plaintiff on this point, was the following deposition of Benjamin A. Buck.

"In September, 1848, I resided in the city of Baltimore; I was present at Mr. Gunnison's counting room, at or about the 6th day of September, 1848; Mr. Willett, of the firm of Pickell & Willett, was also present; Mr. Willett negotiated with Mr. Gunnison, two notes of Holland & Porter; the amount of each note amounted to about $1000, one a little over $900, and the other about $1000; my impression is, that the commission agreed on, was somewhere in the neighborhood of five per cent; I think it was some thing less than that." Being shown two notes with protests annexed, witness says, "I believe they are the two notes I have above alluded to; I had two notes on that day from Mr. Gunnison, on Holland & Porter, and I believe these two are the identical notes.

"I don't think that I could recognize the hand-writing of Pickell, but I should that of Willett; I have seen Willett sign his name; I believe the indorsement on both notes to be that of Mr. Willett."

The defendant contended, that the notes in question were fraudulently given to, and received by, Pickell & Willett, and that it was incumbent on the plaintiff to prove that he had received the notes honestly, in the usual course of business, for value, and that there was no such evidence given in the case.

The court, (PEARSON, J.,) in answer to points, charged the jury *inter alia* as follows:

"2. If the jury believe the defendant was a partner of Holland in the mercantile business, the giving of promissory notes is generally incident to such partnerships. It may be, and often is, incident to the business of mining, and if the jury believe that it is common for those engaged in the coal trade to give notes, acceptances, &c., or if this firm had been in the habit of giving notes and acceptances, and the act was recognized by each, then each of these partners had a legal right to use the name of the firm, which will be bound by the note so given, in the hands of an innocent and *bona fide* holder.

"3. The indorsements of negotiable paper *prima facie* pass it, and the presumption is that it is for value, until the contrary is proved. In the present case, if the jury believe that Holland, without the knowledge and consent of Porter, gave the paper of that firm to Pickell & Willett, for his (Holland's) own private

debt, or for the accommodation of Pickell & Willett, as between those parties, it was a gross fraud on Porter, which would preclude Pickell & Willett from recovering from Porter; and if they indorsed over the paper to a third person, it is necessary for that person if notified, to prove that he paid value.

"4. Fraud is not to be presumed, but must be proved, which may be done by direct evidence or circumstances; and if the jury believe, from the evidence, that this paper was given by Holland to Pickell & Willett, for his own private debt, or for their accommodation, without Porter's consent, it is a fraud upon Porter.

"If the jury believe from the evidence of Buck, that Gunnison purchased the notes from Pickell & Willett in good faith; and for value, and paid for them, he is entitled to recover, provided a partnership existed between Holland & Porter, such as is explained, and the general power existed to give notes as stated; although Holland fraudulently gave the notes, and Pickell & Willett fraudulently received them."

Verdict for plaintiff. The charge of the court was assigned for error.

*W. A. Porter*, for plaintiff in error.—It has frequently been determined, that it is error to submit to a jury a question of fact of which there is no evidence. In *Kelley* v. *Kauffman*, 6 Har. 351, it was decided to be error in the court, to permit the jury to infer an agreement by the plaintiff, to take a note at his own risk, from circumstances which did not justify such a conclusion. The same principle is affirmed in *Sartwell* v. *Wilcox*, 8 Har. 117; 10 B. 363. After the notice given by the defendant, requiring the plaintiff to prove his title to the notes, by showing how they came into his possession, and what he paid for them; and the evidence given showing that they were concocted, and circulated in fraud of the defendant, it became indispensable for the plaintiff to prove that he was an innocent holder, that he paid value for the notes, and had taken them in the usual course of business, before maturity. The burden of proof rested entirely on the plaintiff. The rule requiring the holder to make such proof is illustrated and established in *Beltzhoover* v. *Blackstock*, 3 Watts, 20; *Knight* v. *Pugh*, 4 W. & S. 448; *Snyder* v. *Reily*, 6 Barr, 165.

———, for defendant in error.—The deposition of the witness, Buck, was put fully and fairly to the jury, and it is a sufficient reply to say, that they have passed upon the facts contained in it. It would have been error in the court to reject the deposition. "Where there is a spark of evidence of a fact, it

should not be excluded from the jury." *Fitzwater* v. *Stout*, 4 Har. 22.

The opinion of the court was delivered July 24, 1854, by

LEWIS, J.—It is conceded that the possession of a negotiable note, with the indorsement of the payee, is *prima facie*, a sufficient title to enable the plaintiff to maintain an action on it. But it is frequently said, that if the defendant gives any evidence, however slight, tending to cast suspicion upon the title of the plaintiff, the latter will be required to prove that he obtained the note by a *bona fide* purchase for value, in the usual course of business. As the defendant cannot be presumed to have any acquaintance with the business transactions which the plaintiff may have with third persons, and as the plaintiff is presumed to be thoroughly acquainted with his own affairs, the burden of proof is thrown, by very slight circumstances, upon the shoulders of the latter. It is reasonable that this should be so. Any other course would open a road to fraud. But what circumstances are deemed sufficient to throw this burden upon the plaintiff? It cannot for a moment be supposed, that a mere notice from the defendant requiring the plaintiff to prove the consideration paid by him for the note, would be sufficient; far from it. The notice has no effect whatever in shifting the *onus probandi*. It is merely a duty required by the rules of practice, whenever the defendant himself proposes to give the evidence necessary to entitle him to call upon the plaintiff, to show how he came by the note. The object of the notice, is to protect the plaintiff from surprise at the trial. Under a notice thus given, a defendant may prove that the note has been *stolen* or *lost*, or *obtained by duress*, or *procured*, or *put in circulation* by *fraud*. On proof of either of these circumstances, it is incumbent on the plaintiff to show himself to be a holder *bona fide*, and for a valuable consideration, otherwise he is considered as standing in no better situation, than the former holder, in whose hands the instrument received the taint. This principle is certainly well established. It is sustained by the soundest reasoning, as well as by the highest authority in England and in Pennsylvania. *Holmes* v. *Harper*, 5 Bin. 469; *Beltzhoover* v. *Blackstock*, 3 Watts, 27; *Albrecht* v. *Strimpler*, 7 Barr, 477; *Whitane* v. *Edmonds*, 1 Mood. & Rob. 366; *Heath* v. *Sansom*, 2 B. & Ad. 291; 22 Eng. Com. Law, 78; *Collins* v. *Martin*, 1 B. & P. 648. It is conceded, that the mere absence of a consideration between the original parties to the instrument, will not be sufficient to shift the burden of proof; for where the note is obtained and put in circulation *without fraud*, the drawer has but little to complain of, if called upon for payment. 4 W. & S. 445; 6 Id. 221; 7 Barr, 476.

[Hottenstein's Appeal.]

It is probable that Patterson, J., stated the rule too broadly, when he declared in *Heath* v. *Sansom*, that "wherever the original payee could not recover on the instrument, the indorsee may be called upon to show how it came to his hands." He seems to have thought so himself in the subsequent case of *Whitacre* v. *Edmunds*. But where the note has been *procured*, or *put in circulation by fraud*, the case is clearly within the rule, which requires the plaintiff to prove himself a *bona fide* holder. In this case, the learned judge who instructed the jury below, very properly informed them that "if they believe that Holland, without the knowledge and consent of Porter, gave the paper of the firm of Holland & Porter, to Pickell & Willett, *for Holland's own private debt*, or *for the accommodation of Pickell & Willett*, as between those parties, it was a gross fraud on Porter." This is in exact accordance with the decision in *Heath* v. *Sansom*, when it was held, that if one of two partners gives a note in the name of both for his own private debt, *it must be taken to have been given in fraud of the other partner.* 2 B. & Adol. 291. Where a plaintiff derives title through such a fraud, the law requires him to show that his own hands are clean. This the plaintiff below undertook to do, by the deposition of Benjamin A. Buck. Although this deposition was far from being clear on this point, it was fairly left for the decision of the jury. If the plaintiff in error had believed, that his interest would be promoted by a more explicit statement of the transaction, he would doubtless have procured it through the medium of a cross examination.

The other questions appear to have been properly disposed of by the Court of Common Pleas. The judgment should be affirmed.

Judgment affirmed.